MONTIEL, Judge.
The appellant, Walter Lee Burrell, was indicted for capital murder made capital because two people were killed as part of the same scheme or course of conduct, in violation of § 13A-5-40(a)(10), Code of Alabama 1975. A jury found Burrell guilty as charged. The trial court followed the jury’s recommendation and sentenced Burrell to life in prison without parole.
Burrell claims that the trial court erred in overruling his objection to the jury’s selection based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As soon as the jury was chosen, Burrell’s defense counsel raised a Batson motion. In support of that motion, Burrell’s attorney stated the following.
“MR. PICKARD [defense counsel]: When we got down to the time of the strikes, there were eight blacks left on the jury. The State has struck one, two, three, four, five of those eight. Eight blacks, leaving only three. One that he struck, number 61, who is E.G., is a pastor and his wife works for social security and been married 21 years.
“Also, stated on voir dire that he had been engaged in conversation with people in the past where he supported capital punishment and stated that there was biblical support for it. No question that he ever answered ...
“THE COURT: Well, first of all, let’s make sure we consider first of all whether or not the defendant can make out a prima *946 facie ease. When the strikes commenced, if my mathematics are correct and my calculation is correct, we struck from a pool of 40.
“Of that group there were 20 white females, 50 percent of the venire; there were 12 white [males], 30 percent of the venire; four black males, ten percent of the venire; and four black females, also ten percent of the venire. The jury as composed now is made up of 14 individuals.
“MR. ROGERS [PROSECUTOR]: Four black males and how many females? Something is wrong. I missed somebody.
“THE COURT: You had 40. Twenty white females. We had 21 until we lost that last lady. We have 12 white males, 10 black females, and 10 black males. Ten percent, I’m sorry.
“Four each, black males and four black females. Twelve white males and 20 white females. That is my observation.
“MR. PICKARD: Yes, sir. We struck three of the four black males.
“MR. ROGERS: Judge we had to start with a panel of at least nine black individuals, because there are four left on the jury at this point in time. And I struck five.
“THE COURT: Let me get my calculations.
“MR. ROGERS: If there were four black females and four black males, that would be eight.
“THE COURT: I may be wrong. Nobody really identified the jurors by race as we went along anyway.
“Go ahead, Mr. Pickard, and then you can make your motion. Woody’s right. The makeup of the jury now is nine white jurors and five black jurors.
“MR. PICKARD: Well, I would say, frankly, him striking three of four black males — or were there five, Judge?
“Three out of the four black males, Walter Burrell being a black male, they have eliminated his true peers. There is not any neutral racial relation [sic] reasons for him striking the black pastor that said he was in favor of the capital punishment. He answered no question that would have been indicative of him being a bad juror for the State. They struck him for no apparent reason other than race.
“The other one, 46, Mr. D., who served on a Grand Jury and had served on a civil case, was married, a good upstanding citizen. He never answered a question that would give cause for the State to strike him other than for race.
“Number 128, a supervisor at Brewer for Trinity Industries. He never answered a question that would give rise for any reason for the State to strike him, other than he was black.
“Eliminating three out of the four black males, two of the five black females, was only for race-related reasons we would contend. They struck six of 20 white females, three of 12 white males. And I think it shows they were striking for race-related reasons.
“THE COURT: All right. My calculations reflect that the makeup of the jury exceeds the minority presence on the jury, and exceeds the minority presence on the venire. I find that the Defendant has failed to make out a prima facie case that the State has exercised its preemptory challenges in a racially discriminatory fashion.”
The Alabama Supreme Court has expressly disapproved of the following dicta in Harrell v. State, 571 So.2d 1270, 1271 (Ala.1990) cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991): “[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created.” Ex parte Thomas, 659 So.2d 3, 3 (Ala.1994). Therefore, evidence that a greater percentage of blacks sat on the jury than were on the venire does not relieve the trial court from determining whether the defendant has established a pri-ma facie case of racial discrimination.
From the record, the trial court’s denial of Burrell’s Batson motion appears to be based on the dicta in Harrell that has now been disapproved. The trial court cannot base its determination of whether a prima facie case of discrimination was established *947 solely on a comparison of the percentage of blacks on the jury to the percentage of blacks on the venire. Ex parte Thomas, supra.
Therefore, we remand this cause to the trial court for an evidentiary hearing to determine whether Burrell established a pri-ma facie case of racial discrimination in the State’s exercise of its strikes. If the trial court finds that Burrell established a prima facie case, the State must give its reasons for its strikes, and the trial court will determine whether those reasons are race neutral. The trial court is directed to file a return to this court within 60 days, and to include in that return any testimony taken, as well as the court’s written findings and conclusions.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.