The appellant, Alex Jerome Hood, Jr., was indicted and convicted for the capital murder-for-hire of Montgomery County Deputy Sheriff Isaiah Donald Harris. He was sentenced to imprisonment for life without parole. The appellant raises five issues on this appeal from that conviction.
 I
The trial court did not err by denying the appellant's motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). The appellant did not meet his burden of presenting a prima facie case of discrimination by the State in the selection of the jury.
The jury venire consisted of 44 persons, of whom 15 (34%) were black. The State used 10 of its 16 peremptory challenges to remove blacks from the venire. The defense used all of its 16 peremptory challenges to remove whites. The jury that resulted was composed of 5 blacks (41.7%), and 7 whites.
In attempting to make a prima facie showing underBatson, the appellant relied only on the number of blacks struck by the State. Defense counsel did not bring to the circuit court's attention any other factor which might tend to show that the prosecutor purposefully discriminated against potential jurors on the basis of race. The trial court found that the defense had not presented a prima facie case of purposeful racial discrimination and that the State was not required to give the reasons for its strikes.
This case falls within the rule announced in Harrell v.State, 571 So.2d 1270 (Ala. 1990), cert. denied, ___ U.S. ___,111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). There the Alabama Supreme Court observed:
 "1) The lawfully established venire consisted of 28 people, of whom 10 (35.7%) were black; 2) the prosecutor used 5 of her 8 peremptory challenges to strike blacks and the remaining 3 to strike whites; 3) defense counsel used all 8 of his peremptory challenges to strike whites from the venire; and 4) the jury that was ultimately empaneled consisted of 5 blacks, amounting to 41.7% of the jury (a greater percentage than was on the lawfully established venire), and 7 whites.
 "If these were the only facts Harrell relied on to raise an inference of discrimination, we would agree with the State and reverse the judgment of the Court of Criminal Appeals. . . . [A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created.
Logically, if statistical evidence *Page 1024 
may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, then it should also be available to show the absence of a discriminatory purpose."
Harrell v. State, 571 So.2d at 1271-72 (first emphasis in original; second emphasis added) (citation omitted).
Although both this court and the Alabama Supreme Court have observed that the assistant district attorney who prosecuted the appellant has a history of using peremptory challenges to discriminate against black jurors, see Ex parte Bird Warner,594 So.2d 676 (Ala. 1991), that history, standing alone, does not establish a prima facie case for the defense in any given case. Compare Ex parte Harrell, 571 So.2d at 1272 (past conduct of the prosecutor, in connection with other facts relating to the particular venire, is relevant in determining whether an inference of discrimination exists); Ex parte Bird Warner, 594 So.2d at 681-682 ("evidence [of past history], inconjunction with the disparate impact of the peremptory strikesin this case, . . . raises an inference of discriminatory intent"). In this case, the prosecutor did not state any reason for striking any member of the venire.
Under these circumstances, Harrell dictates that we uphold the trial court's determination that the appellant did not establish a prima facie case under Batson and Ex parte Branch,526 So.2d 609 (Ala. 1987), for the following reasons: (1) the trial court was presented with no evidence of alleged discrimination other than the number of blacks struck by the State, and (2) the peremptory striking process did not have a disparate impact upon the number of blacks empaneled as jurors. Instead, the process resulted in a jury of proportionately more black citizens than the venire from which it was selected.
 II
The appellant contends that his motion for judgment of acquittal made at the conclusion of the State's case should have been granted because the testimony of accomplice Lorenzo "Bobo" McCarter was not corroborated. We disagree.
McCarter's testimony about the killing of Deputy Harris was corroborated on virtually every point — by the appellant's own statement to the police, and by three other witnesses: Donald Tyler, Freddie Patterson, and Kenneth Gilmore. The only point upon which McCarter's testimony was not corroborated was that the appellant received $100 from Mrs. Harris to murder Deputy Harris.
The appellant acknowledges the congruence between most of McCarter's testimony and the other evidence presented by the State, but he insists that because the "for hire" element of the capital offense was not independently corroborated, the State did not establish a prima facie case of capital murder. That is not the law in Alabama.
As early as 1867, our Supreme Court held that a charge requiring corroboration of "every material part" of an accomplice's testimony "went beyond the requirements of the statutory rule, or any rule recognized by the common law."Montgomery v. State, 40 Ala. 684, 688 (1867). More recently, inEx parte Bell, 475 So.2d 609, 613 (Ala.), cert. denied,474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), a capital case, the court held that Ala. Code 1975, § 12-21-222, "does not require corroborative testimony as to material elements of the crime; it only requires other evidence 'tending to connect the defendant with the commission of the offense.' " See alsoAndrews v. State, 370 So.2d 320 (Ala.Cr.App.), cert. denied,370 So.2d 323 (Ala. 1979), wherein this court observed:
 "The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. 'Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony.' . . . Corroborative evidence need not directly confirm any particular fact nor go to *Page 1025 
every material fact stated by the accomplice."
Andrews, 370 So.2d at 322.
 III
The appellant argues that his statement should not have been admitted into evidence at his trial because it was the product of an illegal warrantless arrest not based on probable cause.
Montgomery County Sheriff's Investigator Bruce Huggins testified that he had obtained the following information prior to the appellant's arrest: that Deputy Harris had been shot with a shotgun; that Mrs. Harris admitted to law enforcement officers that she was having an affair with McCarter; and that Billy Whitehurst told the police that McCarter "had been attempting to hire people to kill Mr. Harris," and "had attempted to hire [the appellant] and Michael Sockwell." Investigator Huggins also learned from Billy Whitehurst that the appellant, McCarter, and Sockwell "had been seen together in [the appellant's] automobile . . . just a few hours before the killing." (R. 435.) This information strongly implicated the appellant in the death of Harris and constituted probable cause for an arrest.
The appellant contends that the foregoing information was insufficient because there was no showing of Billy Whitehurst's veracity or reliability as an informant. "[A]s a general proposition, any person purporting to be a crime . . . witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case." 1 W. LaFave,Search Seizure, § 3.4(a) at 719 (2d ed. 1987) (quoted inWomack v. State, 555 So.2d 299, 300 (Ala.Cr.App. 1989). From the record before us, we conclude that the police had no reason not to treat Whitehurst as a presumptively reliable citizen-witness.
According to McCarter's testimony, Whitehurst was the proprietor of the Pine Leaf grocery store, an establishment where the appellant and McCarter went to drink beer "every day," and the owner of a remodeling business for which McCarter occasionally did construction work. Whitehurst was thus in a position to obtain the information he claimed to have obtained about the appellant and McCarter. Compare Powell v. State,548 So.2d 590, 602 (Ala.Cr.App. 1988) ("it [was] at least known that the informant could have [had] personal knowledge of what he allege[d]") (quoting 1 W. LaFave, Search Seizure § 3.3(f) at 687), affirmed, 548 So.2d 605 (Ala. 1989). Whitehurst was not implicated in the instant offense and apparently had no ax to grind against the appellant. We can find no circumstances which would have caused the police to doubt Whitehurst's information in this case. The appellant's arrest was based on probable cause and was lawful. His statement made subsequent to that arrest was properly admitted into evidence.
 IV
The appellant was sentenced on November 16, 1990. Sixty days later, on January 14, 1991, he filed a pro se motion for new trial claiming that he was denied the effective assistance of counsel because his lawyers refused to allow him to testify in his own defense. The motion was summarily denied without an evidentiary hearing.
A motion for new trial filed more than 30 days after sentencing is untimely, and the trial court has no jurisdiction to consider it. Ross v. State, 581 So.2d 495, 496 (Ala. 1991). See Rule 13(a)(2), A.R.Crim.P.Temp. (now Rule 24.1(b), A.R.Crim.P.).
 "An appellate court's review on appeal is limited to matters seasonably raised in the trial court. . . . A claim first presented in an untimely motion for new trial is not preserved for appellate review and may not be considered on appeal from the judgment of conviction."
Ross v. State, 581 So.2d at 496. The claims raised in the appellant's motion for new trial are procedurally barred.
 V
The appellant insists that the trial court erred by refusing his written requested charges numbered 1, 2, 6, and 12. *Page 1026 
Charges 1 and 2 dealt with the credibility of the accomplice's testimony, as follows:
 "Members of the jury I charge you that if a conviction in this case depends upon the testimony of Lorenzo 'Bobo' McCarter and if the jury doubts the truthfulness of such witness, you cannot convict the defendant."
 "Members of the jury I charge you that if the conviction of the defendant depends upon testimony of Lorenzo 'Bobo' McCarter then if each of you, after considering his testimony, cannot say beyond a reasonable doubt that the evidence is true, then you must find the defendant not guilty."
R. 959. During the charge conference, the following exchange occurred with regard to the first two written requested charges:
 "THE COURT: If a conviction depends on testimony of McCarter you cannot convict the defendant of — that's refused; right?
"[DEFENSE COUNSEL]: No, sir.
"THE COURT: Why not?
 "[DEFENSE COUNSEL]: If the jury doesn't believe he got a hundred dollars from McCarter, it's a not guilty.
 "THE COURT: I don't know what you're trying to say here. Same thing on [written requested charge] two."
R. 662.
There was no error in the refusal of Charges 1 and 2 because the instructions were incomplete, confusing, and argumentative. If the jury doubted McCarter's truthfulness on some points, yet found him believable on other material matters, they were authorized to convict the appellant. The court fully instructed the jury that if they believed any witness had wilfully sworn falsely on a material matter, they were entitled to disregard all or any part of that witness's testimony.
There was no error in the refusal of charges 6 and 12, dealing with complicity, because those principles were covered by the court's oral charge on the law of accomplice liability. See Rule 14, A.R.Crim. P.Temp. (now Rule 21.1, A.R.Crim.P.).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.