On Application for Rehearing
The opinion released on May 20, 1994, is withdrawn and the following is substituted as the opinion of the Court.
Addie Lee Thomas was convicted of the murder of her husband and was sentenced to 20 years' imprisonment. The Court of Criminal Appeals affirmed, by an unpublished memorandum (seeThomas v. State, 636 So.2d 492 (Ala.Crim.App. 1993)); we granted her petition for a writ of certiorari to determine whether a statement in that court's memorandum conflicts withBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), and cases following Batson. The question is whether we should reaffirm the principle that "[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created."Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), cert.denied, *Page 4 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1990). Or, as Thomas phrases the issue, may a defendant make a prima facie case of discrimination by showing that the prosecutor used a large number of his peremptory challenges to engage in a pattern of striking blacks from the venire, even though a higher percentage of blacks ultimately sat on the jury than on the venire?
The only facts in the record that are relevant to this case appear in the following discussion between the defense attorney, the prosecutor, and the judge:
 "MR. KELLY: On behalf of the defendant, Addie Thomas, we would, pursuant to Batson, . . . ask the State of Alabama to come forward with neutral reasons for their strikes. In the jury venire, 32, each side was granted 9 strikes with [the] 10[th] strike being alternate. Of the 10 strikes which the State has, they utilized 9 of them to strike members of African-American descent, which is a recognized minority. We would ask the State to come forward with race-neutral reasons for these [strikes]. As the jury is constituted, I believe there are six members of . . . African-American descent seated on the jury.
 "MR. ESTES: Your Honor, in response the State would contend that the State is not obliged to come forward with race-neutral reasons for its strikes, since the composition of the jury venire is 15 minority and 17 white jurors. The composition of the jury as selected is 50 percent black, and because the composition of the jury is slightly more than the composition of the jury venire in terms of the percentage, the State is not obliged to show race-neutral reasons for any of its strikes. The composition of the jury does not show a prima facie Batson [violation].
"THE COURT: I agree. I would overrule."
The memorandum of the Court of Criminal Appeals states, in pertinent part:
 "Affirmed by Memorandum. The judgment of the circuit court is affirmed. The appellant, Addie Lee Thomas, appeals her conviction and her subsequent sentence of twenty years' imprisonment for the murder of her common law husband. Thomas raised two issues on appeal. Thomas first contends that the trial court committed reversible error by not allowing a Batson hearing following the state's use of nine of its ten peremptory strikes against black members of the venire. The original venire pool consisted of 47% black members and the final empaneled jury was 50% black. The trial court did not make a clearly erroneous ruling by finding that a prima facie case of discrimination was not established against the state. See Harrell v. State, 571 So.2d 1270 (Ala. 1990) (holding that a prima facie case of discrimination is not established merely by the number of peremptory strikes against blacks in cases where the percentage of blacks on the empaneled jury is higher than the percentage of the venire pool)."
In Harrell v. State, 555 So.2d 263 (Ala. 1989) ("Harrell I"), the Court held that after the prosecutor uses peremptory challenges to remove black veniremembers, the court should hold a Batson inquiry to afford the defendant the opportunity to present a prima facie case of racial discrimination. 555 So.2d at 267-68.
The circuit court in this case did not deprive the defendant Thomas of an opportunity to put on a prima facie case, but simply held that Thomas had failed to make a prima facie showing of discriminatory strikes and, thus, the court refused to order the prosecutor to give reasons for his strikes.
In Harrell I, this Court granted the State's petition for certiorari review, but affirmed the judgment of the Court of Criminal Appeals, remanding the case for the circuit court to hold a Batson hearing. The Court recognized in Harrell I the problems circuit judges were facing in struggling with whether a "pattern of strikes" existed in a particular case:
 " '[T]he court may be forced to play an often confusing numbers game to decide whether a "pattern" of discriminatory strikes exists. Decisions based upon numbers alone necessarily assume a somewhat arbitrary character and are a major reason for the often contradictory outcomes in lower court decisions.' " *Page 5 
555 So.2d at 266 (quoting Note, Batson v. Kentucky and theProsecutorial Peremptory Challenge: Arbitrary and CapriciousEqual Protection, 74 Va.L.Rev. 811, 821 (1988)). However,Harrell I cited Ex parte Branch, 526 So.2d 609 (Ala. 1987), as "set[ting] out certain specific kinds of conduct by a prosecutor that would raise the inference of discrimination under Batson," including " 'A pattern of strikes against black jurors on the particular venire. . . .' "[1] Harrell I, 555 So.2d at 266, quoting Branch, 526 So.2d at 622.
On remand, the circuit court held a hearing and determined that Harrell had made a prima facie case of purposeful discrimination on the part of the prosecutor in selecting the jury. The venire had contained 10 black members; the prosecution struck 5 of them. The circuit court determined that the prosecutor had failed to present race-neutral reasons for striking those five black venire-members. The Court of Criminal Appeals, on return to remand, reversed Harrell's conviction and remanded the case for a new trial. The State again petitioned for a writ of certiorari, and this Court granted the petition. The Court stated the following in Harrell v. State,571 So.2d 1270, 1271-72 (Ala. 1990), cert. denied, 499 U.S. 984,111 S.Ct. 1641, 113 L.Ed.2d 736 (1990) ("Harrell II"):
 "[T]he State . . . argues that the following undisputed facts established, as a matter of law, that the prosecutor did not engage in purposeful discrimination when she struck the [five] blacks from the jury venire: 1) The lawfully established venire consisted of 28 people, of whom 10 (35.7%) were black; 2) the prosecutor used 5 of her 8 peremptory challenges to strike blacks and the remaining 3 to strike whites; 3) defense counsel used all 8 of his peremptory challenges to strike whites from the venire; and 4) the jury that was ultimately empanelled consisted of 5 blacks, amounting to 41.7% of the jury (a greater percentage than was on the lawfully established venire), and 7 whites.
 "If these were the only facts Harrell relied on to raise an inference of discrimination, we would agree with the State and reverse the judgment of the Court of Criminal Appeals. As we explained in Harrell [I], a defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury [emphasis in original]. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created [emphasis added]. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, Harrell [I], 555 So.2d [at] 267, citing United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986), then it should also be available to show the absence of a discriminatory purpose."
In Harrell II, the Court pointed out that the defendant presented evidence "that the five blacks who were struck from the venire shared only one characteristic — their membership in the black race — and that in all other respects they were as heterogeneous a group as the community as a whole." 571 So.2d at 1272. The Court also pointed out that "the prosecutor engaged in a rather limited voir dire," and that "[t]he record fail[ed] to show that any of the five blacks responded to the prosecutor's [voir dire] questions in such a way as to give any insight into why they were stricken." Id. Finally, the Court inHarrell II noted that the United States Court of Appeals for the Eleventh Circuit had already held, under the Swain v.Alabama[2] test, that the Mobile County district attorney's office, which had brought the *Page 6 
charges against Harrell, had a history of discriminatorily striking blacks. Id.
Thus, the emphasized statement near the end of the two paragraphs quoted above from Harrell II was obiter dictum. The Court stated that "[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." 571 So.2d at 1271. In Harrell's case, that was not the only thing shown, as the Court proceeded to illustrate.
Although the principle stated in Harrell II appears logical from one perspective, i.e., if statistics can be used to show the presence of a discriminatory impact, then they can also be used to show the absence of such an impact, this principle has had the inappropriate effect of preventing a finding of a prima facie showing of discrimination, even where, as here, the prosecutor used a significant number of his strikes to remove blacks from the venire. See, e.g., Scott v. State,599 So.2d 1222 (Ala.Crim.App. 1992), cert. denied, 599 So.2d 1229
(Ala. 1992), overruled on other grounds, Smith v. State,612 So.2d 1314, 1316 (Ala.Crim.App. 1992); Hood v. State,598 So.2d 1022, 1023 (Ala.Crim.App. 1991); cf. Demunn v. State,627 So.2d 1005, 1006 (Ala.Crim.App. 1991), aff'd,627 So.2d 1010 (Ala. 1992); Huntley v. State, 627 So.2d 1011, 1011-12
(Ala.Crim.App. 1991), aff'd, 627 So.2d 1013 (Ala. 1993).
In Batson, the United States Supreme Court held:
 "Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."
Batson, 476 U.S. at 89, 106 S.Ct. at 1719 (citations omitted).
The Court went on to outline the components of a defendant's prima facie case:
 "To establish such a case, the defendant first must show that he is a member of a cognizable racial group, . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.[3] Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
 "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose."
Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723 (emphasis added). In Ex parte Branch, we stated:
 "The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' . . . .
 "2. A pattern of strikes against black jurors on the particular venire; e.g. 4 of *Page 7 6 peremptory challenges were used to strike black jurors."
Branch, 526 So.2d at 622-23 (emphasis added; citations omitted).
The problem with the emphasized statement in Harrell II is that it has led to a conflict with a factor that was approved by the Supreme Court in Batson and by this Court in Branch as tending to establish a prima facie case, i.e., proof that the prosecutor engaged in a "pattern of discriminatory strikes." In many instances, the black members of a venire drawn for a particular case or trial week will constitute 30%, 40%, 50%, or a higher percentage of the venire-members. Because of the statement in Harrell II, a prosecutor wishing to strike blacks on a racially discriminatory basis may do so as long as he or she strikes less than a certain number so that a higher percentage of blacks sits on the jury than sat on the venire and as long as he or she engages in no overt discrimination to otherwise establish a prima facie case. Thus, by the language in Harrell II, the Court has created a playing field for a more sophisticated numbers game than the Court was trying to eliminate in Harrell I. A skilled but racially biased attorney could learn to manipulate the strike process so as to be able to strike a certain number of blacks from the venire on the basis of race, and yet not be called to account for the racially based strikes, as long as some blacks were left on the jury. Such a result should not be approved.
 " '[A] prima facie case may be made where relevant circumstances indicate an inference of purposeful race discrimination no matter that one or more black persons may remain on the jury.' United States v. Wilson, 884 F.2d 1121, 1123 (8th Cir. 1989). 'The striking of one venireperson for a racial reason violate[s] the Equal Protection Clause, even when valid reasons for striking some black jurors are shown.' Williams v. State, 548 So.2d 501, 507 (Ala.Crim.App. 1988), cert. denied, 489 U.S. 1028 [109 S.Ct. 1159, 103 L.Ed.2d 218] . . . (1989). 'Of course, the fact that blacks are ultimately seated on the jury does not necessarily bar a finding of discrimination under Batson[,] see [United States v.] Battle, 836 F.2d [1084] [at] 1086 [(8th Cir. 1987)], but the fact may be taken into account in a review of all the circumstances as one that suggests that the government did not seek to rid the jury of persons who shared the defendant's race.' United States v. Young-Bey, 893 F.2d 178, 180 (8th Cir. 1990)."
Mitchell v. State, 579 So.2d 45, 48 (Ala.Crim.App. 1991),cert. denied, 596 So.2d 954 (Ala. 1992).
 "[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race."
Powers v. Ohio, 499 U.S. 400 at 409, 111 S.Ct. 1364 at 1370 (emphasis added).
The language in Harrell II has unfortunately resulted in a possibility that prosecutors may violate the Equal Protection Clause and exclude blacks from jury service solely on the color of their skin. We disapprove the statement in Harrell II
indicating that "[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created," 571 So.2d at 1271, to the extent that it has been construed to preclude a finding of a prima facie Batson violation where the attorney engaged in a pattern of striking blacks from the venire. We disapprove this statement in Harrell II as it has been applied in these instances, because such applications prevent a defendant from using a factor indicating discrimination that was approved in both Branch and Batson. Such an application was not the Court's intent. In Ex parte Bird, 594 So.2d 676 (Ala. 1991), decided more than a year after Harrell II, this Court did not construe the dictum of Harrell II to mean that a defendant cannot make a prima facie case if the percentage of blacks on the jury is greater than the percentage that was on the venire. *Page 8 
Instead, the Bird Court stated only that such a statistical showing weakens a prima facie case. See 594 So.2d at 680-81.
Long v. State, 615 So.2d 114, 115-16 (Ala.Crim.App. 1992),cert. denied, ___ U.S. ___, 114 S.Ct. 179, 126 L.Ed.2d 138
(1993); Johnson v. State, 601 So.2d 1147, 1148
(Ala.Crim.App. 1992); Christianson v. State, 601 So.2d 512, 516, 517
(Ala.Crim.App. 1992); Scott v. State, 599 So.2d 1222
(Ala.Crim.App. 1992), cert. denied, 599 So.2d 1229 (Ala. 1992), overruledon other grounds, Smith v. State, 612 So.2d 1314, 1316
(Ala.Crim.App. 1992); and Hood v. State, 598 So.2d 1022, 1023
(Ala.Crim.App. 1991), relied solely on the statement in Harrell II
in holding that no prima facie case of discrimination existed, despite the fact that the prosecutor used a large number of his peremptory challenges to strike blacks from the venire. They are therefore inconsistent with this opinion, and they are to that extent overruled. Cf. Guthrie v. State, 598 So.2d 1013,1019-20 (Ala.Crim.App. 1991), cert. denied, 598 So.2d 1020
(Ala. 1992); and Strickland v. State, 593 So.2d 138, 139-40
(Ala.Crim.App. 1991) (both distinguishing the application ofHarrell II).
The prosecutor here used 9 of his 10 strikes to strike blacks from the venire. By objecting to this pattern of striking blacks from the venire, Thomas made a prima facie showing of aBatson violation. See Batson, 476 U.S. at 96-97,106 S.Ct. at 1723; Williams, 571 So.2d at 990; see also Branch, 526 So.2d at 622-23. The district attorney's response to Thomas's objection indicated that he was relying on the statement in Harrell II
and was interpreting it to mean he did not have to give race-neutral reasons as long as blacks formed a higher percentage of the jury than of the venire. The circuit court simply agreed with this argument. A circuit court's ruling on aBatson objection is entitled to great deference, and we will reverse a circuit court's Batson findings only if they are clearly erroneous. Branch, 526 So.2d at 625-26. However, because it appears that the circuit court erroneously relied on the dictum in Harrell II and construed it to mean that Thomas had not established a prima facie case, we reverse the judgment of the Court of Criminal Appeals and remand this case for that court to order a hearing on whether the prosecutor used his peremptory strikes in a discriminatory fashion to remove blacks from the venire.
We emphasize that our disapproval of the construction that has been given Harrell II does not mean that an increased percentage of blacks on the jury can never be a circumstance to be considered in ruling whether a discriminatory use of peremptory strikes has been shown. In a proper case, the fact that the percentage of blacks on the jury is higher than the percentage of blacks on the venire may be a factor to be considered in deciding whether a prima facie case of discrimination has been made or rebutted. However, where, as here, the prosecutor has used such a large portion of his strikes against blacks as to indicate a pattern of striking blacks from the venire, the fact that the jury has a higher percentage of blacks than the venire had does not mean that no prima facie case of discrimination has been made.
OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED; AND APPLICATION OVERRULED.
HORNSBY, C.J., and SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, J., who did not participate in the original decision, dissents from the denial of the State's application for rehearing.
[1] We have held, since the release of Harrell I, that a defendant can establish a prima facie case solely on the fact that a prosecutor used a large number of his peremptory challenges to strike black veniremembers. See Ex parte Williams,571 So.2d 987, 990 (Ala. 1990) (holding that the prosecutor's use of four of his five peremptory strikes to remove blacks was sufficient to establish a prima facie case).
[2] 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
[3] Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411
(1991), held that a white defendant has third-party standing to raise an equal protection argument under Batson, thus eliminating the requirement that the defendant and those struck be of the same minority.