The appellant was convicted of robbery in the first degree and was sentenced to 35 years' imprisonment. That sentence was to run concurrently with the sentence imposed in another case, CC-91-1537.
The appellant argues that the trial court erred in finding that he did not establish a prima facie case of racial discrimination or gender-based discrimination in the prosecutor's exercising of his peremptory challenges during jury selection. Ex parte Branch, 526 So.2d 609 (Ala. 1987);J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89
(1993). The record indicates that the following transpired immediately following the striking of the jury:
"THE COURT: Do we have a motion?
 "[Defense counsel]: Yes. At this time the defendants would move to quash the venire, submitting to the court that the State has used its peremptory jury strikes to — he removed people for racial reasons. I will submit to the court my calculations indicate we have the original panel of thirty persons, one black male was not available, twenty-nine. Of that twenty-nine, it is comprised of eight white males, eight white females, six black males and six black females.
 "The State used their peremptory challenges —
 "[Defense counsel]: I had six black males, and I show seven black females and eight white females. They excused four black males, four out of six; one black female; that matched one out of seven and three white females, that matched three out of eight. They exercised them for racially motivated reasons and that the percentage of blacks on the jury panel is a percentage less than the blacks on the venire, according to my calculations.
 "Also, that the specific individuals struck answered no question or provided no information of a specific category as to why they were struck.
 "The defendant exercised his peremptory challenges to remove one black male, a Birmingham police officer, who had experience in narcotics and the Task Force and formerly was an employee of the Department of Corrections. They did remove one black female, a lady, who in her answers to voir dire indicated she, herself, was the victim of a robbery with a gun in 1984. We will submit to the court the State used their peremptory challenges as in the Batson case, in the following: Not only not giving this defendant a right to a fair trial in front of an impartial jury, but also removed these jurors' right to serve.
 "THE COURT: You made a sufficient case, and we will have to inquire as to the strikes.
 "[Prosecutor]: Judge, let me say this: We started out with a panel and I will recite it for the record, with twenty-nine individuals: Eight white males, eight white females, six black males, and seven black females. If my calculations are correct, when you round off to two digits, we started off with a panel where the black males and females comprised forty-five percent of the jury panel at that particular time.
 "After the conclusion of the State's strikes and also including the defendant's strikes, we have a panel of seven white individuals. Forty-five percent of thirteen, when you take thirty-five percent of the *Page 428 
final jury makeup, it comes out to the same ratio we originally started out with, and ended up with the same ratio on the jury. I would like to point out that in the defense's strikes, the first strike was a white female, the second was a black male. Strikes three through six removed white individuals from the jury panel. It is as these were removed from the jury panel, the percentages of individuals that the State could strike from was greater the percentage of blacks and became a much larger number.
 "So, therefore, I would say that the State has not used its strikes and the defense has not made out a prima facie case because my figures take into account the defense's strikes in arriving at the final jury makeup. The State most strongly urges the court to consider the final jury makeup before ruling that in a prima facie case that the State used its strikes in a discriminatory manner.
 "[Defense counsel]: I guess we better say this defendant is a black male and that the victim is a white male since that is not indicated on the record itself.
 "We finally say that the State did, in fact, remove seventy-five percent of the black males, that there were six to start with. There is one left. We removed one. They removed four. If we are talking black males, then there is a prima facie case.
 "THE COURT: Are you telling me Batson is going that far?
"[Defense counsel]: I think it will be.
 "THE COURT: I don't think they have yet. I don't think that the prima facie case is made out. We have a higher percentage on the actual jury panel than we had on the venire panel, than we started with.
 "I will seat these folks, swear them in and let them out until the morning.
"(Whereupon the jury returned to the courtroom.)"
Thus, when defense counsel originally made his motion, referring to the number of the prosecutor's strikes made against blacks and the alleged lack of any meaningful voir dire to have formed a basis for the strikes, the trial court originally found that a prima facie showing had been made and requested the State to come forward with race-neutral reasons for its strikes. The prosecutor then made reference, statistically, to the racial percentage of racial and gender makeup of the venire as compared to that of the final jury. Based on that information, the State "most strongly urge[d] the Court to consider the final jury makeup before ruling that" the State had exercised its strikes in a discriminatory manner. The trial court thereafter found no prima facie case, stating that the percentages on the actual jury panel of the allegedly bias groups were higher than those on the venire panel.
However, the Alabama Supreme Court has determined that evidence that blacks were struck and that a greater percentage of blacks sat on the jury than on the venire does not alone create an inference of discrimination. Ex parte Thomas,659 So.2d 3 (Ala. 1984). In Ex parte Thomas, supra, at 7, the Alabama Supreme Court explained its disapproval of the language leading to the practice in an earlier opinion, Harrell v.State, 571 So.2d 1270 (Ala. 1990), cert. denied, 499 U.S. 984,111 S.Ct. 1641, 113 L.Ed.2d 736 (1990), stating:
 "Because of the statement in Harrell II, a prosecutor wishing to strike blacks on a racially discriminatory basis may do so as long as he or she strikes less than a certain number so that a higher percentage of blacks sits on the jury than sat on the venire and as long as he or she engages in no overt discrimination to otherwise establish a prima facie case. Thus, by the language in Harrell II, the court has created a playing field for a more sophisticated numbers game than the court was trying to eliminate in Harrell I. A skilled but racially biased attorney could learn to manipulate the strike process so as to be able to strike a certain number of blacks from the venire on the basis of race, and yet not be called to account for the racially based strikes, as long as some blacks were left on the jury. Such a result should not be approved."
While Ex parte Thomas expressed disapproval of this percentages comparison approach *Page 429 
for analyzing whether a prima facie case of racial discrimination had been established, this practice has also been condemned when applied to alleged gender discrimination during jury selection. See Talley v. State, 669 So.2d 1006
(Ala.Cr.App. 1994); Roy v. State, 680 So.2d 935
(Ala.Cr.App. 1995).
Therefore, this cause is due to be remanded to the trial court with instructions that a hearing be conducted to determine whether the appellant established a prima facie case of racial discrimination, pursuant to Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parteBranch, 526 So.2d 609 (Ala. 1987), in light of Ex parte Thomas, supra. Gafford v. State, 666 So.2d 860 (Ala.Cr.App. 1995);Drake v. State, 668 So.2d 877 (Ala.Cr.App. 1995); Eason v.State, 675 So.2d 483 (Ala.Cr.App. 1995); Bishop v. State, [Ms. CR-93-0750, Jan. 13, 1995] ___ So.2d ___ (Ala.Cr.App. 1995); Mack v. State, 687 So.2d 1236 (Ala.Cr.App. 1995);Burrell v. State, 676 So.2d 945 (Ala.Cr.App. 1995); Gorum v.State, 671 So.2d 761 (Ala.Cr.App. 1994); Bennett v. State,659 So.2d 174 (Ala.Cr.App. 1994); Long v. State, 668 So.2d 54
(Ala.Cr.App. 1994).
If the trial court determines that the appellant has established a prima facie case, then the State must be required to give its reasons for its strikes of the black and female venire members. If, however, the trial court determines that the appellant has failed to establish a prima facie case, it shall submit to this court written findings of fact and conclusions of law, giving specific reasons for that determination. The trial court is directed to make a return to this court within 45 days of the date of this opinion.
REMANDED WITH INSTRUCTIONS.
All judges concur.