COBB, Judge.
This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17,1995.
The appellant, Lawrence Alexander Jr., was convicted of first-degree burglary, a violation of § 13A-7-5, Ala. Code 1975. He was sentenced as a habitual offender to life in prison without the possibility of parole. He raises three issues on appeal.
I.
The appellant contends that he made a prima facie showing of racial and gender discrimination by the prosecution in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and J.E.B.v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).[1] He alleges that a prima facie ease of discrimination was proven by the fact that the prosecution used all seven of its peremptory strikes (% 100) to remove females, three of whom were black, where the seven veniremembers had only gender and/or race in common. He argues that the State should have been required to offer race-neutral reasons for the seven strikes.
In denying the appellant’s motion, the trial court said:
“THE COURT: I note that ... six of your seven strikes were white males and one was a white female.
[[Image here]]
“... [I]t looks like that the percentages are still not askewed by the results of the striking. We started out with a ratio of 40.7% minorities on the jury. I have not figured it out as to gender but it looks like it was fairly evenly distributed, two more males on the jury than females. And let me see what we’ve got now. Well, one more male than female.
“It looks like it’s just one more male on the jury now so it looks like there’s seven males and six females so the number has not changed as far as the percentages but the number of percentage of minorities is increased to 53.8%.
“I never thought for the life of me 14 years ago when I started this we would be deciding issues on percentages of makeup for a jury. So I don’t see that a prima facie case has been made pursuant to [Ex parte] Branch, [526 So.2d 609 (Ala.1987) ] pursuant to all the other eases, pursuant to Kidd [v. State, [Ms. CR-92-247, March 4, 1994] 649 So.2d 1304 (Ala.Cr.App.1994) ], so I don’t see that a prima facie case has been made. I don’t see a pattern that has developed on this so I’ll overrule the motion and let the matter go forward and let the jury be seated as selected.
“[THE DEFENSE]: "... [T]here is not sufficient cause to strike [the three black females] for any overt reason that we can see from our notes and we would renew the motion as to those three under Branch, and what’s the other one?
“THE COURT: Kidd was the most recent one. That’s a good decision for you to read as far as the Batson ruling. That’s probably the best one that’s been out so far. So I’ll overrule and let the matter go forward.”
R. 13-15.
The trial court’s denial of the appellant’s motion is based on dicta contained in Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), that was expressly disapproved by the Alabama Supreme Court in Ex parte Thomas, 659 So.2d 3 (Ala.1994). Harrell stated that “[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created.” While Harrell dealt specifically with race discrimination, J.E.B. extends the principles discussed in Batson and its progeny to gender discrimination. According to Ex parte Thomas, the prosecution’s use of all its strikes against blacks clearly shows a pattern *794 of striking blacks from the venire. “By objecting to this pattern of striking blacks from the venire, [the appellant] made a prima facie showing of a Batson violation.” Thomas, supra, 659 So.2d at 8. According to the United States Supreme Court’s decision in the same reasoning would apply to the striking on the basis of gender. The trial court in determining whether a prima facie case of gender discrimination had been established, should have considered the fact that the prosecution used all of its peremptory strikes to remove females from the jury. Also, absent any information in the record other than statistics, the fact that the prosecution used three of its seven peremptory strikes to remove blacks should have been considered in determining whether the appellant proved a prima facie case of racial discrimination.
The record does show that, based on Thomas, supra, the appellant offered evidence establishing a prima facie case of gender discrimination and also possibly racial discrimination, and that that prima facie case was not rebutted by the prosecution. “Once a party makes a timely Batson motion, the movant must establish a prima facie case of discrimination, and, if a prima facie case is established, the opposing party must offer a clear, specific, and race-neutral reason for each strike. Batson, supra.” Macon v. State, 659 So.2d 221 (Ala.Cr.App.1994).
“The explanations for the strikes must be ‘clear, specific, and legitimate,’ ‘relatefd] to the particular case to be tried,’ and ‘nondiscriminatory.’ Ex parte Branch, 526 So.2d 609, 623 (Ala.1987) (emphasis omitted). In Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866,114 L.Ed.2d 395 (1991) ... ‘A neutral explanation in the context [of Batson ] means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.’ The reasons for the prosecution’s strikes may upon further inquiry by the trial court prove to be race neutral.”
Cox v. State, 629 So.2d 664, 667 (Ala.Cr.App. 1992).
“The failure to articulate a sufficient race-neutral reason for excluding even a single black veniremember may entitle the defendant to a new trial.” Ex parte Bankhead, 625 So.2d 1146,1148 (Ala.1993). “ ‘The State may not cure the constitutional deficiency of an explanation simply by augmenting it with similar excuses none of which, standing alone, would be sufficient.’ ” Cox v. State, 629 So.2d at 668 (citation omitted).
Thomas allows that facts may exist under which percentages may be relevant to make or rebut a prima facie case of discrimination. The Alabama Supreme Court stated in Thomas:
“In a proper case, the fact that the percentage of blacks [or women] on the jury is higher than the percentage of blacks [or women] on the venire may be a factor to be considered in deciding whether a prima facie case of discrimination has been made or rebutted. However, where, as [in Thomas ], the prosecutor has used such a large portion of his strikes against blacks [or women] as to indicate a pattern of striking blacks [or women] from the veni-re, the fact that the jury has a higher percentage of blacks [or women] than the venire had does not mean that no prima facie case of discrimination has been made.”
Thomas, supra. The record in the present case shows that such a large portion of the prosecutor’s strikes were used to remove females and blacks, as to indicate discriminatory intent in their removal.
Based on the Alabama Supreme Court’s ruling in Ex parte Thomas, supra, we conclude that the appellant presented a prima facie case of gender and racial discrimination in the prosecution’s exercise of its peremptory strikes. Because the appellant presented a prima facia case of gender and racial discrimination, the prosecution must give its reasons for its strikes. We remand this cause to the circuit court for an evidentiary hearing to determine whether the prosecution exercised any of its strikes in a racially discriminatory manner. The circuit court must determine if the prosecution’s reasons *795 are race- and gender-neutral. The circuit court is directed to file a return to this court within 90 days of the date of this opinion, and in that return to include a transcript of any testimony taken, as well as the court’s written findings and conclusions.
II.
The appellant contends that it was an abuse of the trial court’s discretion to allow the admission into evidence of photographs of the burglary scene, which, according to the appellant, were cumulative and therefore more prejudicial than probative. Specifically the appellant objected to exhibits numbers, 3, 4,15,16, and 17.
Exhibit number 3 was a photograph taken outside of the burglarized apartment showing the bedroom window through which the burglar attempted to escape and its window screen. There was no objection to exhibit number 3, R. 73. “In order for this court to review an allegation of erroneous admission of evidence, a timely objection must be made to' the introduction of the evidence, specific grounds for the objection should be stated and a ruling on the objection must be made by the trial court.” Gibbs v. State, 342 So.2d 448 (Ala.Cr.App.1977) Goodson v. State, 540 So.2d 789, 791 (Ala.Cr. App.1988).
Exhibit number 4 depicted a bent window screen in the window from which the appellant had attempted to escape. The appellant did not state how this photograph was cumulative. However, the trial court compared exhibit number 4 to exhibit number 3 before admitting it into evidence. The record does not support the allegation that the exhibit was cumulative. However, the “[a]d-mission of cumulative testimony is within the sound discretion of the trial judge. Even though such evidence may tend to inflame the jury, its admissibility will not be affected if it sheds light upon a material inquiry or illustrates the transaction at issue.” Allen v. State, 290 Ala. 339, 343, 276 So.2d 583, 586 (1973).
Exhibit number 15 was a photograph showing the bed and items on the bed in the bedroom where the appellant was apprehended. Exhibit number 16 depicted dresser drawers that had been pulled out of the dresser in the bedroom and items hanging out of the drawers. Exhibit number 17 depicted assorted items thrown on the bed. R. 80-1. The trial court admitted Exhibits 15, 16, and 17 stating that “they show different scenes.” R. 83. The exhibits are not included in the record on appeal, therefore, there is no basis on which to find the trial court in error. “Where the record is silent on appeal, it will be presumed what ought to have been done was not only done, but rightly done.” Adams v. State, 659 So.2d 224 (Ala.Cr.App.1994) (citation omitted). We find no abuse of discretion by the trial court in admitting the photographs into evidence. “Photographic exhibits are admissible even though they may be cumulative, Washington v. State, 415 So.2d 1175, 1181 (Ala.Cr.App. 1982).... As long as the exhibits tend to shed light on the issues being tried, their admission is within the sound discretion of the trial judge.” Williams v. State, 506 So.2d 368, 371 (Ala.Cr.App.1986), cert. denied, 506 So.2d 372 (Ala.1987).
III.
The appellant contends that the trial court erred in admitting into evidence and playing for the jury the tape recorded statement the appellant gave to the police one hour after his arrest. The appellant argues that when he made the statement he was too upset as a result of having been shot at by the police to make a rational and knowledgeable decision to waive his rights and give a statement. “A two-part test is used to determine whether an accused’s statement is admissible. First, the trial court must determine whether the accused was informed of his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights, and second, the trial court must determine whether the accused has voluntarily and knowingly waived his Miranda rights in making his statement. Holder v. State, 584 So.2d 872 (Ala.Cr.App.1991); Carpenter v. State, 581 So.2d 1277 (Ala.Cr.App. 1991).” Pardue v. State, 661 So.2d 263 (Ala. Cr.App.1993), reversed on other grounds, 661 So.2d 268 (Ala.1994). The appellant was ad *796 vised of his Miranda, rights at the scene of his arrest. R. 51. Prior to giving the statement the appellant was re-advised of his rights and he signed a written waiver of rights form. R. 111. Part one of the test was met. ‘Whether the accused voluntarily and knowingly waived his Miranda rights is determined by the totality of the circumstances of each case. Menefee v. State, 592 So.2d 642 (Ala.Cr.App.1991); Lawhorn v. State, 581 So.2d 1159 (Ala.Cr.App.1990), aff'd, 581 So.2d 1179 (Ala.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991).” Pardue, supra. The record reflects that he was properly advised of his Miranda rights on two occasions and that he understood those rights and that he voluntarily, knowingly, and without duress chose to waive his rights and to make a statement to the police. “A trial court’s determination that an accused’s statement was voluntary will not be disturbed on appeal unless the determination is contrary to the great weight of the evidence. Woods v. State, 592 So.2d 631, 634 (Ala.Cr.App.), writ quashed, 592 So.2d 636 (Ala.1991).” Pardue, supra. The record on appeal supports the trial court’s ruling that the tape-recorded statement was voluntarily made by the appellant and that it therefore was admissible into evidence.
Therefore, we remand this cause to the circuit court for an evidentiary hearing as directed in part I of this opinion to determine whether the State exercised its strikes in a discriminatory manner.
REMANDED WITH DIRECTIONS. 
All the Judges concur.

. In J.E.B. v. Alabama, 511 U.S. 127,-, 114 S.Ct. 1419, at 1430, the Supreme Court of the United States held that "the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man.”