The appellant, Carolyn Woods, was convicted of assault in the second degree, a violation of § 13A-6-21, Code of Alabama 1975, and assault in the first degree, a violation of § 13A-6-20, Code of Alabama 1975. She was sentenced to 10 years in the penitentiary for her conviction for assault in the second degree and to 18 years in the penitentiary for her conviction for assault in the first degree. The trial court ordered that both sentences be served concurrently.
The state's evidence tended to show that on August 31, 1992, the appellant shot Darnell Ingram in the abdomen and the finger. Also, the state's evidence tended to show that the appellant shot Kelly Hendricks in her calf and struck her in the head with a pistol.
The appellant raises two issues on appeal.
 I
The appellant first contends that the trial court erred in ruling that she had failed to make a prima facie showing that the state used its peremptory strikes to remove blacks and women from the jury venire in violation of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Batson held that black veniremembers could not be struck from a black defendant's jury because of their race. In Powers v. Ohio,499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the court extended its decision in Batson to apply also to white defendants. Batson was further extended to apply to civil cases in Edmonson v. Leesville Concrete Co., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The United States Supreme Court in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348,120 L.Ed.2d 33 (1992), held that the protections of Batson were also available to defense counsel in criminal trials. The Alabama Supreme Court has held that the protections of Batson apply to the striking of white prospective jurors. WhiteConsolidated Industries, Inc. v. American Liberty Insurance,Co. 617 So.2d 657 (Ala. 1993). Batson was recently extended to include gender-based strikes in J.E.B. v. Alabama,511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
The state exercised four of its seven peremptory strikes (57%) to remove blacks from the venire. Three of the four blacks were women. The state used six of its seven peremptory strikes (86%) to remove females.
The following transpired during the hearing on the appellant's Batson motion:
 "THE COURT: All right. Stan [defense counsel], go ahead with your motion. This is a motion, Batson motion. I had already indicated how I would rule on it, but I'll let you make a motion as timely filed at this time.
 "MR. FIELD [defense counsel]: Thank you, Your Honor. I would like to make a motion under Batson v. Kentucky concerning the selection of the jury by the prosecution. Four of the six strikes by the prosecution —
"THE COURT: Four out of seven.
 "MR. FIELD: Four out of seven strikes taken by the prosecution were black individuals *Page 49 
on a racial basis. That's more than half of the total number of strikes taken.
 "THE COURT: Well, let me say that the number of percentage of representation of minorities on the [venire] prior to the jury being selected was 44.4 percent. Now, after the jury selection process, there's 6 out of 13, which would mean that the representation on the jury is now 46.15 percent. So it does not look like the percentage has decreased. I know that it is not the only factor, but it looks like the State has exercised a cross-section as far as the jury selection process. I note that each of you were predominant in your selection. The State struck six females and one male. The defense struck six males and one female. That might rise to a Batson challenge. If they were seated equally that would offset each other as far as male to female. So I think it would be counterproductive. So it looks like each of you exercised your challenges, but you offset each other's challenges in that regard. So I will deny the Batson motion and we'll let the jury stay seated as they are.
"Anything else?
 "MR. FIELD: Just one further point, Your Honor. Three out of four strikes exercised by the prosecution were black and female members of the venire. And I except to your motion."
The appellant argues that the fact that the state used four of its seven peremptory strikes to remove blacks was sufficient to constitute a prima facie showing of racial discrimination by the state. From the above dialogue, it appears that the trial court relied on this court's previous decision in Harrell v.State, 571 So.2d 1270 (Ala. 1990), cert. denied, 499 U.S. 984,111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) ("Harrell II") when it ruled that no prima facie case of discrimination was shown.
This court is bound by the holdings of the Alabama Supreme Court. § 12-3-16, Code of Alabama 1975. In Ex parte Thomas,659 So.2d 3 (Ala. 1994), that Court disapproved the statement inHarrell, as follows:
 "We disapprove the statement in Harrell II
indicating that '[w]hen the evidence shows that only blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created,' 571 So.2d at 1271, to the extent that it has been construed to preclude a finding of a prima facie Batson
violation where the attorney engaged in a pattern of striking blacks from the venire. We disapprove this statement in Harrell II as it has been applied in these instances, because such applications prevent a defendant from using a factor indicating discrimination that was approved in both [Ex parte] Branch [, 526 So.2d 609 (Ala. 1987)] and Batson. Such an application was not the Court's intent."
Thomas, 659 So.2d at 7 (emphasis in original).
The trial court's comments show that it based its ruling on its comparison between the percentage of blacks on the venire and the percentage of blacks on the jury. In Thomas, the Court held that the fact that the percentage of blacks on the jury is higher than the percentage of blacks on the venire does not mean that no prima facie case of discrimination has been made. Rather, this is only one factor to be considered in deciding whether a prima facie case of discrimination has been establish. Thomas, 659 So.2d at 8.
Therefore, this case is remanded to the trial court with directions that the trial judge conduct a hearing to decide whether the appellant established a prima facie case of racial discrimination under Batson, Ex parte Branch, 526 So.2d 609
(Ala. 1987), and Ex parte Thomas. If the trial court decides that the defense has established a prima facie case of discrimination, the court shall require the state to give its reasons for its strikes of black veniremembers and proceed as outlined in Branch. If the trial court decides that the appellant has failed to establish a prima facie case, it shall set forth, in its written finding of facts and conclusions of law, the specific reasons for that determination. On remand, the trial court is authorized to grant the appellant any relief to which he may be entitled. See McClain v. State,659 So.2d 161, 163 (Ala.Cr.App. 1994). *Page 50 
 II
The appellant next contends that the trial court erred in allowing the state to amend one of the indictments to charge assault in the second degree rather than assault in the first degree. The appellant was initially charged with assault in the first degree under § 13A-6-20(a)(1), Code of Alabama 1975, which provides:
 "(a) A person commits the crime of assault in the first degree if the person does any of the following:
 "(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument;"
The indictment was amended to delete the word "serious" from the charge so that it complied with the language of the statute defining assault in the second degree. See § 13A-6-21(a)(2), Code of Alabama 1975.
Rule 13.5(a), Ala.R.Crim.P., states:
 "(a) Amendment of Charge. A charge may be amended by order of the court with the consent of the defendant in all cases, except to change the offense or to charge new offenses not contemplated by the original indictment. The court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced."
Here, the charge in the indictment was amended from assault in the first degree to assault in the second degree. Under § 13A-1-9, Code of Alabama 1975, an offense is a lesser included offense if "[i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to same person, property or public interests, or a lesser kind of culpability suffices to establish its commission." The only difference between the original charge and the amended charge is the word "serious" as a modifier of the words "physical injury." Therefore, assault in the second degree is a lesser included offense of assault in the first degree under the facts of this case.
Rule 13.2(c), Ala.R.Crim.P., states:
 "(c) Notice of Necessarily Included Offenses. Specification of an offense in an indictment or information shall constitute a charge of that offense and of all lesser included offenses necessarily included therein."
The original charge in the indictment of assault in the first degree put the appellant on notice that she was also charged with all lesser included offenses, including assault in the second degree. Therefore, the substantial rights of the appellant were not prejudiced by amending the indictment.
This case is remanded with directions as provided in Part I of this opinion. The trial court shall comply with these instructions and make a return to this court within 56 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.