The appellant, Olin Grimsley, was convicted of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975. He was sentenced to life in the penitentiary.
The appellant contends that the trial court erred in ruling that he had failed to make a prima facie showing that the state used its peremptory strikes to remove blacks from the jury venire in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson the United States Supreme Court held that black venire-members could not be struck from a black defendant's jury because of their race. InPowers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411
(1991), the court extended its decision in Batson to apply also to white defendants. Batson was further extended to apply to civil cases in Edmonson v. Leesville Concrete Co.,500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The United States Supreme Court in Georgia v. McCollum, 505 U.S. 42,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), held that the protections ofBatson were also available to defense counsel in criminal trials. The Alabama Supreme Court has held that the protections of Batson apply to the striking of white prospective jurors.White Consolidated Industries, Inc. v. American LibertyInsurance, Co., 617 So.2d 657 (Ala. 1993). Batson was recently extended to include gender-based strikes in J.E.B. v. Alabama,511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
The state exercised five of its eight peremptory strikes (62.5%) to remove blacks from the venire. The appellant raised a timely Batson motion and the following occurred:
 "BY THE COURT: All right, are there any Batson motions in the case?
 "BY MR. UTTER [defense counsel]: We have one, Your Honor.
 "BY THE COURT: Let's move to the defense first on their Batson motion.
 "BY MR. UTTER: Your Honor, just for the record, the state used 62% of their strikes on black jurors. Montgomery County, I believe, has 35% Afro-American population, which would almost double the probability, certainly can't do a Cirolla Matthews [sic] hypogeothermic calculation on it, but it's way above the thirty-two percentage. *Page 1196 
"BY THE COURT: How many blacks were struck?
 "BY MR. UTTER: State's got 6, 6 of their 8, which comes to roughly 62%.
 "BY THE COURT: And how many blacks are on the jury?
"BY MR. UTTER: That — three blacks.
 "BY THE COURT: Does it appear that there are three blacks on the jury?
"BY MR. UTTER: What do you guys count?
 "BY MR. HEDEEN [assistant district attorney]: We're looking.
 "BY MR. VALESKA [district attorney]: I count five, Judge. The numbers would be number fifty-three, V.D. Number sixty, R.F. Let's see, next would be number ninety-one, G.H., a black female. Ninety-nine, J.T., black male. Go down to one [hundred] ten, C.K., a black female.
"BY MR. UTTER: That's five, Your Honor.
"BY MR. VALESKA: That's five.
 "BY THE COURT: Were there 11 blacks on the available venire?
 "BY MR. VALESKA: Let me count, Judge. Judge, I count 10, I might have miscounted.
"BY MR. UTTER: We've got ten.
"BY MR. VALESKA: Ten.
 "BY THE COURT: So, tell you what, what were the state's six strikes, —?
"BY MR. VALESKA: I can give them to you.
 "BY THE COURT: Let me ask Mr. Utter or Mr. Valeska, who were the blacks the state struck?
 "BY MR. UTTER: Let's see, we've got number seventy-three, A.H. Number seventy-nine-a, D.G. Number eighty-nine, C.H. Number one [hundred] eleven, D. Number seventy-four, [N.H.]. Is that five?
"BY THE COURT: Yes, that was five.
 "BY MR. UTTER: That's right, then you had three whites.
 "BY THE COURT: So five of eight strikes were black, then six — no, five blacks are serving on the jury?
"BY MR. VALESKA: Yes, sir.
 "BY THE COURT: And Montgomery County has about 35% black.
 "BY MR. VALESKA: That would mean 41.5% of this jury is black.
 "BY THE COURT: And we had twenty-eight people on the jury?
"BY THE CLERK: Yes, sir.
 "BY THE COURT: Of the 28, 10 were black; is that right?
"BY MR. VALESKA: Yes, sir.
 "BY THE COURT: So about 35, 36% of this panel was black. The state, — let's see, 41% of the jury is black; the trial jury, 50% of the state's strikes were black, and Montgomery County is 36% black.
"BY MR. UTTER: Roughly, Your Honor.
 "BY THE COURT: I'll deny the motion insofar as a prima facie case has not been shown of racial striking. Any other matters before the 12 plus 2 alternates are empaneled? Anything for the state?"
It appears from the above dialogue that the trial court based its ruling on whether a prima facie case of discrimination had been established solely on the fact that a larger percentage of blacks served on the jury than on the venire and/or than constituted the black population of Montgomery County. This practice was recently condemned by the Alabama Supreme Court inEx parte Thomas, 659 So.2d 3 (Ala. 1994).
Before the release of Thomas, this court had consistently held that when a black defendant raised a Batson objection and the evidence showed that a greater percentage of blacks had sat on the jury than the percentage that had sat on the venire, no prima facie case of discrimination was established. Harrell v.State, 571 So.2d 1270 (Ala. 1990). See also Raspberry v. State,615 So.2d 657 (Ala.Cr.App. 1992); Ashley v. State,606 So.2d 187 (Ala.Cr.App. 1992); Jones v. State, 603 So.2d 419
(Ala.Cr.App. 1992); Hood v. State, 598 So.2d 1022 (Ala.Cr.App. 1991).
The Alabama Supreme Court in Thomas specifically disapproved the language in Harrell that this court had consistently relied on. The Court stated: *Page 1197 
 "We disapprove the statement in Harrell II
[571 So.2d 1270 (Ala. 1990)] indicating that '[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created,' 571 So.2d at 1271, to the extent that it has been construed to preclude a finding of a prima facie Batson violation where the attorney engaged in a pattern of striking blacks from the venire. We disapprove this statement in Harrell II as it has been applied in these instances, because such applications prevent a defendant from using a factor indicating discrimination that was approved in both [Ex parte] Branch, [526 So.2d 609 (Ala. 1987)] and Batson. Such an application was not the court's intent. . . ."
Thomas, 659 So.2d at 7.
This court is bound by the decisions of the Alabama Supreme Court. § 12-3-16, Code of Alabama 1975. Therefore, because the trial court based its ruling solely on the practice condemned in Thomas, we must remand this cause to the Circuit Court for Montgomery County so that that court can conduct a new Batson
hearing.
The court is to consider "all relevant circumstances" that could show discrimination or the lack of discriminatory intent.Branch. The fact that the jury is composed of a high percentage of the group that is alleged to have been excluded is only one factor that the court should consider when determining whether a prima facie case of discrimination has been established.Thomas. If the court finds that the appellant established a prima facie case of discrimination, then the court should require the state to give its reasons for striking the blacks from the venire and proceed as directed by Branch. If the court decides that the appellant has failed to establish a prima facie case, it shall set forth, in its written finding of facts and conclusions of law, the specific reasons for that determination. On remand, the trial court is authorized to grant the appellant any relief to which he may be entitled. SeeMcClain v. State, 659 So.2d 161, 163 (Ala.Cr.App. 1994). The trial court shall file with this court its written findings of fact and conclusions of law and make a return to this court within 56 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.