[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1141 
 On Rehearing Ex Mero Motu
The opinion of August 19, 2005, is with-drawn, and the following is substituted therefor.
In Ex parte Pierce, 576 So.2d 258 (Ala. 1991), this Court was presented with the following question: "Should this Court grant a petition for certiorari to review a decision of the Court of Criminal Appeals that affirmed the petitioner's conviction but also remanded the cause to the trial court for a new sentencing hearing?" 576 So.2d at 258. The Court answered that question as follows:
 "When the Court of Criminal Appeals remands a case for some action to be performed by the trial court, as it has in this case, it retains jurisdiction of the case. . . .
 ". . . .
 "The Court of Criminal Appeals has not yet affirmed the petitioner's sentence of death, and there remains an issue concerning that sentence. The petition for the writ of certiorari, therefore, is premature and is due to be denied."
576 So.2d at 259. See also Ex parte Charest,854 So.2d 1101 (Ala. 2002), in which this Court denied a petition for the writ of certiorari because it had been filed prematurely, i.e., before the Court of Criminal Appeals had made a final decision in the case, which it had remanded to the trial court to allow the State to respond to the merits of certain Rule 32, Ala. R.Crim. P., claims raised by the petitioner and the trial court had not yet filed its return to remand.
In this case, in reviewing a Rule 32 petition filed by Harris, the Court of Criminal Appeals affirmed Harris's conviction but remanded the cause for the trial court to conduct a new sentencing hearing. Both Harris and the State petitioned for a writ of certiorari. It appeared initially that these petitions were premature because the Court of Criminal Appeals had ordered a new sentencing hearing in the case; however, this case is distinguishable from Pierce. Here, the Court of Criminal Appeals did not order a return to its remand order, and that court, therefore, did not retain jurisdiction over the case. Therefore, the judgment of the Court of Criminal Appeals in this case is a final decision from which a petition for a writ of certiorari is proper.
In order to clarify for the State and the criminal defense bar what constitutes a *Page 1142 
final decision of the Court of Criminal Appeals from which a petition for a writ of certiorari can be filed in this Court pursuant to Rule 39, Ala. R.App. P., we hold that when the Court of Criminal Appeals remands a case, unless the Court of Criminal Appeals has expressly directed a return to its remand order, we will treat its decision as final and a petition for a writ of certiorari will lie as to both the State and the defendant. To the extent that Ex parte Pierce holds otherwise, it is hereby overruled. In so holding, we expressly do not abrogate the exception to the final-decision requirement in those cases in which the Court of Criminal Appeals has "set out a holding that [is] applicable to all cases as a matter of legal principle." McCoo v. State, 921 So.2d 450, 457
(Ala. 2005); see Bishop v. State, 608 So.2d 345
(Ala. 1992).
Turning to the merits of Harris's petition for the writ of certiorari, we have examined the grounds raised by Harris, and we grant the petition as to Harris's claim regarding a violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); her claim that her trial counsel failed to maintain continuity in representation; and her claim that several of her ineffective-assistance-of-counsel arguments were not precluded by findings of no plain error on direct appeal.
OPINION OF AUGUST 19, 2005, WITHDRAWN; OPINION SUBSTITUTED; WRIT GRANTED AS TO SPECIFIED ISSUES.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
 Opinion on the Merits
LYONS, Justice.
 I. Facts and Procedural History
On July 13, 1989, Louise Harris was convicted of capital murder. The facts underlying that conviction are set out in the Alabama Court of Criminal Appeals' opinion affirming Harris's conviction and sentence. Harris v. State,632 So.2d 503, 508-09 (Ala.Crim.App. 1992). The jury recommended by a vote of 7-5 that Harris be sentenced to life in prison without the possibility of parole, but the trial court rejected the jury's recommendation and sentenced Harris to death. This Court affirmed the Court of Criminal Appeals' judgment. Ex parteHarris, 632 So.2d 543 (Ala. 1993). On certiorari review from this Court's affirmance of Harris's conviction and sentence on direct appeal, the United States Supreme Court considered the constitutionality of Alabama's death-penalty statute and ultimately affirmed the judgment of this Court. Harris v.Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004
(1995).
On June 22, 1995, Harris filed in the Montgomery Circuit Court a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. The circuit court denied Harris's petition. On appeal, the Court of Criminal Appeals reversed the circuit court's judgment in part, affirmed it in part, and remanded the case for a new sentencing hearing. Harris v. State,947 So.2d 1079 (Ala.Crim.App. 2004) ("Harris I"). Harris then filed a petition for the writ of certiorari with this Court, challenging that portion of the Court of Criminal Appeals' judgment affirming in part the circuit court's denial of Harris's Rule 32 petition. We granted certiorari review to consider the following issues: 1) whether the Court of Criminal Appeals erred in rejecting Harris's argument that the prosecutor impermissibly exercised peremptory strikes against black venire members in violation of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); 2) whether the Court of Criminal appeals erred in holding that several of Harris's ineffective-assistance-of-counsel claims *Page 1143 
were precluded by its determination on direct appeal that there was "no plain error"; and 3) whether the Court of Criminal Appeals erred in rejecting Harris's ineffective-assistance-of-counsel claim based on the alleged failure of her counsel to maintain "continuity of representation."
 II. Standard of Review
"[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White,792 So.2d 1097, 1098 (Ala. 2001). However, where the facts in a post-conviction proceeding are disputed and the circuit court has resolved those disputed facts, "[t]he standard of review on appeal in a post conviction proceeding is whether the trial judge abused his discretion when he denied the petition. Exparte Heaton, 542 So.2d 931 (Ala. 1989)." Elliott v.State, 601 So.2d 1118, 1119 (Ala.Crim.App. 1992).
 III. Analysis A. Harris's Batson Claim
In her Rule 32 petition, Harris contends that, in exercising its peremptory strikes of members of the venire, the prosecutor in Harris's trial violated Batson by purposefully discriminating against potential black jurors. The Court of Criminal Appeals held that Harris's Batson claim was procedurally barred under Rules 32.2(a)(2) and (4), Ala. R.Crim. P., as a ground that had been raised and addressed at trial and on direct appeal. Harris I,947 So.2d at 1091. We note that Rules 32.2(a)(3) and (5), Ala. R.Crim. P., also preclude relief based on any ground that could have been, but was not, raised at trial or on appeal, with an exception not applicable here for grounds questioning the trial court's jurisdiction.
Indeed, Harris's Batson claim was raised at trial and on direct appeal, but was rejected based on the following language set forth in Harrell v. State,571 So.2d 1270, 1271 (Ala. 1990): "When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." SeeHarris v. State, 632 So.2d at 513. However, in Exparte Thomas, 659 So.2d 3, 7 (Ala. 1994), a case decided after Harris's direct appeals at the state level had been exhausted, but before the United States Supreme Court had disposed of her case on certiorari review, this Court held:
 "We disapprove the statement in Harrell [v. State, 571 So.2d 1270 (Ala. 1990),] indicating that `[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created,' 571 So.2d at 1271, to the extent that it has been construed to preclude a finding of a prima facie Batson violation where the attorney engaged in a pattern of striking blacks from the venire."
In her appeal from the circuit court's denial of her Rule 32 petition, Harris argued to the Court of Criminal Appeals that, even though she had made a Batson claim at trial and on direct appeal, she was entitled to have that claim reviewed in light of Thomas, which she contended had a "retroactive" effect and was applicable to convictions not yet final when Thomas was announced. In effect, she argued that such retroactivity was an exception to the procedural bars of Rule 32.2. The Court of Criminal Appeals held that Thomas did not "establish a new rule of criminal procedure," and therefore did not apply retroactively to Harris's Batson *Page 1144 
challenge. Harris I, 947 So.2d at 1094. Therefore, the court concluded, Harris's Batson claim was procedurally barred. We granted Harris's petition for the writ of certiorari in order to determine if the Court of Criminal Appeals' ruling that Harris's Batson claim was procedurally barred conflicts with that court's prior cases indicating that Thomas should be applied retroactively to convictions not yet final when Thomas
was decided.
In support of her argument in favor of retroactive application of Thomas, Harris cites Gorum v. State,671 So.2d 761, 764 (Ala.Crim.App. 1994), a case decided on December 29, 1994, in which the Court of Criminal Appeals held:
 "The Alabama Supreme Court issued an opinion in Ex parte Thomas on May 20, 1994. On September 2, 1994, the Supreme Court withdrew the May 20, 1994, opinion and substituted another one. We note that the appellant was tried on February 28, 1994, before the Alabama Supreme Court issued its original opinion in Ex parte Thomas on May 20, 1994. Nevertheless, Thomas controls."
(Emphasis added.) Harris contends that the above-emphasized language in Gorum reveals that this Court's decision inThomas should be applied retroactively in considering her Batson claim. Thus, Harris contends, the Court of Criminal Appeals' decision in the instant case conflicts withGorum. However, the Court of Criminal Appeals inGorum was considering a Batson claim presentedon direct appeal. Gorum did not involve postconviction collateral review under Rule 32, Ala. R.Crim. P. Harris cites several other decisions by the Court of Criminal Appeals that she contends also indicate that Thomas should be applied retroactively. However, like Gorum, those decisions all involved direct appeals. See, e.g., Stargellv. State, 672 So.2d 1359 (Ala.Crim.App. 1994); Drake v.State, 668 So.2d 877 (Ala.Crim.App. 1995); and McClainv. State, 659 So.2d 161 (Ala.Crim.App. 1994). None of the cases Harris cites held that Thomas must be applied under the circumstance here presented, i.e., a postconviction collateral attack in a case in which the Thomas
decision followed unsuccessful direct state appeals attacking the original judgment of conviction, but preceded theUnited States Supreme Court's decision on certiorari review.[1]
Harris contends that she is nevertheless entitled to the retroactive benefit of Thomas. This is so, Harris argues, because certiorari review of this Court's affirmance on direct appeal of Harris's conviction and sentence was still pending in the United States Supreme Court when this Court decided Thomas. In other words, Harris argues that, as in the Gorum line of cases making Thomas
available to other cases on direct appeal, her conviction, pending on certiorari review in the United States Supreme Court, was not "final" when Thomas was decided. Harris citesGriffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708,93 L.Ed.2d 649 (1987), in which the United States Supreme Court held that Batson should be applied retroactively to cases not yet final when Batson was decided. TheGriffith Court defined a final case as "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [to the United States Supreme Court] elapsed or a petition for certiorari finally denied." 479 U.S. at 321 n. 6, 107 S.Ct. 708. Because certiorari review of her *Page 1145 
conviction and sentence was still pending in the United States Supreme Court when this Court decided Thomas, Harris contends that her conviction was not yet final and that therefore Thomas should be retroactively applied to her Batson claim. We disagree.
The United States Supreme Court in Griffith was dealing with the retroactive application of its own
earlier decision (Batson ) to a conviction, still subject to review by certiorari in that Court, that had been affirmed by a state supreme court and where the petition for the writ of certiorari to the United States Supreme Court challenged that affirmance. Griffith did not, nor do any other cases cited by Harris, involve the retroactive application of a state court's interpretation of United States Supreme Court precedent, expressly overruling a prior interpretation of that state court, to a conviction that had been upheld by the state court on direct appeal, yet was, at the time of the new pronouncement, subject to further review only by certiorari in the United States Supreme Court. And we do not construe Griffith as requiring such retroactive application.
Harris contends that the United States Supreme Court's reasons for applying its most current interpretation of the United States Constitution to cases still subject to that court's direct review compel this Court to apply Thomas
retroactively to cases that had been finally reviewed by our Court on direct appeal yet were still pending in the United States Supreme Court when Thomas was announced. We disagree. In Teague v. Lane, 489 U.S. 288, 304,109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court restated its reasons for applying its most current interpretation of federal constitutional law to only those cases that are still subject to that Court's direct review, either on certiorari review of state-court proceedings affirming a judgment of conviction on direct appeal or directly from a United States Circuit Court of Appeals:
 "In Griffith v. Kentucky, 479 U.S. 314
(1987), we rejected as unprincipled and inequitable the Linkletter [v. Walker, 381 U.S. 618
(1965),] standard for cases pending on direct review at the time a new rule is announced, and adopted the first part of the retroactivity approach advocated by Justice Harlan [in Mackey v. United States, 401 U.S. 667, 675 (1971) (Harlan, J., concurring in judgments in part and dissenting in part); and Desist v. United States, 394 U.S. 244, 256
(Harlan, J., dissenting)]. We agreed with Justice Harlan that `failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.' 479 U.S., at 322. We gave two reasons for our decision. First, because we can only promulgate new rules in specific cases and cannot possibly decide all cases in which review is sought, `the integrity of judicial review' requires the application of the new rule to `all similar cases pending on direct review.' Id., at 323. We quoted approvingly from Justice Harlan's separate opinion in Mackey, supra, 401 U.S., at 679:
 "`"If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all. . . . In truth, the Court's assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation." ` 479 U.S., at 323." *Page 1146 
(Emphasis added.) Thus, the United States Supreme Court has determined that, as a judicial body, it must consider its most current interpretation of federal constitutional law in disposing of cases arising from direct review, as opposed to collateral review of a postconviction petition, i.e., it considers its most current interpretation in cases petitioning for the writ of certiorari to the lower appellate court seeking review of the affirmance of a conviction by such court on direct appeal. That is precisely what this Court did when we decided Harris's Batson claim on direct appeal from the judgment of conviction based on Harrell, which was our most current interpretation of what federal constitutional law required at the time.
The United States Supreme Court continued in Teague:
 "Second, because `selective application of new rules violates the principle of treating similarly situated defendants the same,' we refused to continue to tolerate the inequity that resulted from not applying new rules retroactively to defendants whose cases had not yet become final. [Griffith v. Kentucky, 479 U.S. 314], at 323-324 [(1987)] (citing Desist [v. United States], 394 U.S. [244], at 258-259 [ (1969)] (Harlan, J., dissenting) ).'"
489 U.S. at 304, 109 S.Ct. 1060. The "similarly situated defendants" the United States Supreme Court considers itself bound to treat the same are defendants who can still come before that Court on certiorari review of an appeal from a final judgment of conviction or from a decision of a United States Court of Appeals. The term does not include petitioners whose judgments of conviction have previously been affirmed or have otherwise become final and who are now collaterally attacking the conviction in a postconviction proceeding. In fact, the United States Supreme Court refused, in Allen v. Hardy,478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), to applyBatson retroactively to a petitioner appearing before that Court on collateral review of a previous final judgment of conviction. The procedural posture of the postconviction petitioner in relation to the United States Supreme Court inAllen is analogous to Harris's posture in relation to this Court in the instant case. Neither the United States Supreme Court's rationale in Griffith for applying its most current interpretation of federal constitutional law to cases pending before it, nor the definition of a "final" case inGriffith compels the application of Thomas to Harris's Batson claim. Rather, for purposes of Harris's argument that Thomas applies, we conclude that her conviction was final when this Court decidedThomas. Therefore, Harris's case is distinguishable from those cases she cites indicating that Thomas
should apply retroactively only to convictions not yet final.
Harris does not argue that, even if her conviction became final before Thomas was released, Thomas should nevertheless apply to her. Therefore, we do not address that issue. Because the Court of Criminal Appeals' ruling thatThomas does not apply retroactively to Harris'sBatson claim does not conflict with the cases Harris cites, we affirm its judgment. However, we express no opinion as to the Court of Criminal Appeals' conclusion thatThomas did not "establish a new rule of criminal procedure." Harris I, 947 So.2d at 1094.
We note that in Ex parte Floyd, 571 So.2d 1234
(Ala. 1990), a postconviction petitioner argued that he was due a new trial based on an alleged violation of Batson, which was decided after his direct appeals at the state-court level had been exhausted but while his petition for the writ of certiorari was pending before the United States *Page 1147 
Supreme Court, which ultimately denied that petition. This Court ignored the fact that the petitioner, in his direct appeal, had failed to argue in both the Court of Criminal Appeals and in this Court that the prosecutor had discriminated in exercising peremptory strikes. The Court's action in ignoring what appears to have been a failure to preserve error was based on its conclusion that it was bound to apply Batson
pursuant to the United States Supreme Court's decision inGriffith that Batson should apply to cases not yet "final" when Batson was decided, because that is what the Court in Floyd concluded the United States Supreme Court should have done when Floyd's certiorari petition was pending before it, but inexplicably failed to do. Nothing inFloyd requires this Court in this collateral proceeding to apply Thomas, which effected a change in our construction of United States Supreme Court precedent and which was announced after Harris's direct appeals in the state-court system had been exhausted.
 B. Harris's Ineffective-Assistance-of-Counsel Claims
In Thomas v. State, 766 So.2d 860, 953
(Ala.Crim.App. 1998), the Court of Criminal Appeals held that, because the trial court's failure in that case to give a jury instruction on manslaughter did not amount to plain error, i.e., it did not or probably did not adversely affect the substantial rights of the defendant, the defendant also could not show on postconviction review that he was prejudiced, within the meaning of Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by his counsel's failure to object to the failure to give a manslaughter instruction. However, inEx parte Taylor, [Ms. 1040186, Sept. 30, 2005] ___ So.2d ____ (Ala. 2005), we expressly rejected the reasoning that "a petitioner in a Rule 32, Ala. R.Crim. P., proceeding cannot, as a matter of law, establish prejudice underStrickland, when on direct appeal the Court of Criminal Appeals has found no plain error with respect to the substantive claim." ___ So.2d at ____. In her petition for the writ of certiorari, Harris contended that the Court of Criminal Appeals incorrectly rejected several of Harris's ineffective-assistance-of-counsel claims based on findings of "no plain error" on Harris's direct appeal. Harris contends that, in light of Taylor, we should reverse that court's judgment and remand the case to the Court of Criminal Appeals for consideration of whether Harris was actually prejudiced by certain acts or omissions of her trial counsel that she contends amounted to ineffective assistance. Upon further reflection, we conclude that we improvidently granted
Harris contends that her counsel were ineffective 1) in failing to request and obtain appropriate jury instructions regarding accomplice testimony, 2) in failing to object to or to challenge by rebuttal several allegedly erroneous and prejudicial statements made by the prosecution during closing arguments, and 3) in failing to object to the admission of a photograph of the victim while he was alive.[2]
Harris argued to the Court of Criminal Appeals that her trial counsel were ineffective because, she said, they "failed to request a jury charge stating that accomplice testimony must be corroborated by independent evidence that connects the defendant with the offense." Harris I,947 So.2d at 1111. The Court of Criminal Appeals considered the merits of that *Page 1148 
claim and held that the instruction actually given by the trial court followed the substance of § 12-21-222, Ala. Code 1975, which provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Thus, the Court of Criminal Appeals held, Harris's counsel had no ground upon which to base an objection. Therefore, the Court of Criminal Appeals' ruling on this issue was not based solely on a finding of no plain error on direct appeal.
The Court of Criminal Appeals also rejected Harris's claim regarding her counsel's failure to object to the introduction of a photograph of the victim before his death based on the court's determination that Harris had failed to meet her burdens under Rules 32.3 and 32.6(b), Ala. R.Crim. P.:
 "Harris presented nothing at the Rule 32 hearing suggesting error or prejudice in trial counsel's failure to object to the pre-death photograph of Isaiah Harris. Thus, the record supports the circuit court's ruling that this claim is unsupported by any factual basis; accordingly, it fails to satisfy either the burden of proof requirements of Rule 32.3, Ala. R.Crim. P., or the specificity requirements of Rule 32.6(b), Ala. R.Crim. P."
Harris I, 947 So.2d at 1110. The Court of Criminal Appeals also noted that, on direct appeal, it had held that a photograph of the victim before his death was relevant and admissible to identify the victim. Harris I, 947 So.2d 1104. Because the photograph was admissible, the Court of Criminal Appeals held that Harris had failed to demonstrate how her counsel's failure to object to its introduction was error or how counsel's failure to object prejudiced Harris. Therefore, the Court of Criminal Appeals' ruling was clearly based on a ground other than a finding of no plain error on direct appeal.
As to Harris's claims that her counsel failed to object to or to challenge by rebuttal several statements made by the prosecution during closing arguments, the Court of Criminal Appeals held that Harris had failed to meet her burden of proof under Rule 32.3, Ala. R.Crim. P., and her burden of pleading under Rule 32.6(b), Ala. R.Crim. P. Thus, again, the Court of Criminal Appeals' ruling on that issue was not based solely on a finding of no plain error on direct appeal.
We granted Harris's petition for the writ of certiorari to consider her claim that "several of her ineffective-assistance-of-counsel arguments were not precluded by findings of no plain error on direct appeal." Ex parteHarris, 947 So.2d 1139, 1142 (Ala. 2005). The Court of Criminal Appeals made alternative findings, which it concluded supported the circuit court's denial of Harris's ineffective-assistance-of-counsel claims in her Rule 32 petition. The presence of those independent, alternative grounds pretermit consideration of the effect of the finding of no plain error on direct appeal. Because we did not grant certiorari review to consider the validity of the Court of Criminal Appeals' alternative justifications for denying Harris relief, the issue of the inconsistency of the Court of Criminal Appeals' decision with Taylor is moot, and we conclude that we improvidently granted Harris's petition for the writ of certiorari on that issue. Accordingly, we quash the writ of certiorari to the extent it was granted to consider whether the Court of Criminal Appeals erred in rejecting Harris's ineffective-assistance-of-counsel claims on the basis that *Page 1149 
there was no finding of plain error on direct appeal.
 C. Failure of Harris's Counsel to Maintain Continuity of Representation
We granted Harris's certiorari petition to consider her claim that the Court of Criminal Appeals erred in rejecting, based on procedural grounds, her argument that her trial counsel were ineffective in that they failed to maintain continuity of representation. The Court of Criminal Appeals held that that claim was procedurally precluded under Rule 32.2(a)(3), Ala. R.Crim. P., because it could have been, but was not, raised at trial. Harris I, 947 So.2d at 1133-34. Harris argues that her claim could not realistically have been raised at trial, because, she contends:
 "To do so would have required one of Mrs. Harris's nine assigned attorneys to appreciate and articulate — amid the revolving door of attorney dismissals, withdrawals and appointments that forms the basis of this claim — their inability to form the necessary bond with a client facing the gravest of charges, and their resulting ineffective assistance."
(Harris's brief in support of petition at 51.) Harris concedes in her brief that, while she was represented by 11 different attorneys before her trial started, 1 of those attorneys was appointed approximately 9 months before her trial started and another was appointed approximately 3 months before her trial started. Those two attorneys represented Harris throughout the guilt and sentencing phases of trial. Harris's trial counsel had at least nine months in which to consider whether the fact that Harris had been represented by so many different pretrial attorneys amounted to ineffective assistance. Therefore, we agree with the Court of Criminal Appeals that that claim is procedurally barred because it could have been, but was not, raised at trial.
 IV. Conclusion
To the extent we granted Harris's petition for the writ of certiorari in order to consider Harris's argument that the Court of Criminal Appeals erred in concluding that her ineffective-assistance claims were precluded by the finding of no plain error on direct appeal, we quash the writ. In all other respects, we affirm the judgment of the Court of Criminal Appeals.
WRIT QUASHED IN PART; AFFIRMED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] As noted, the United States Supreme Court, after considering the constitutionality of Alabama's capital-sentencing statute, ultimately affirmed the judgment of this Court effectively affirming Harris's conviction and sentence.
[2] Harris listed several other specific ineffective-assistance claims in her petition for certiorari review and in her brief in support of that petition, but she abandoned all but these three in her reply to the State's brief.