WINDOM, Presiding Judge, concurring in part and dissenting in part.
*1197 I agree with the majority's decision to affirm Joshua Eugene Russell's capital-murder conviction. I, however, respectfully disagree with the majority's interpretation of § 13A-5-49(1), Ala. Code 1975. Specifically, I disagree with the majority's determination that the aggravating circumstance defined in § 13A-5-49(1) requires proof that the defendant was represented by counsel or waived counsel during the proceedings that led to his or her imprisonment for the prior offense. Rather, I believe that the validity of the conviction that resulted in the imprisonment is irrelevant to that particular aggravating circumstance. Therefore, I respectfully dissent.
Section 13A-5-49(1) defines the following aggravating circumstance: "[t]he capital offense was committed by a person under sentence of imprisonment." Unlike Alabama's Habitual Felony Offender Act, see 13A-5-9, Ala. Code 1975, or Alabama's aggravating circumstance relating to prior felony convictions, see 13A-5-49(2), Ala. Code 1975, the aggravating circumstance defined in § 13A-5-49(1) does not concern a prior conviction. Thus, the validity of a prior conviction is irrelevant to its application. Applied correctly, § 13-5-49(1), aggravates any capital offense that was "committed by a person under [a] sentence of imprisonment," regardless of the procedure used to convict and sentence that person. Thus, this aggravating circumstance enhances the punishment of those individuals who refuse to conform their behavior to societal norms despite being under the authority of the State, i.e., it punishes those incorrigible offenders who are impervious to the rehabilitative efforts of the State. It is a circumstance to be considered when determining the punishment of someone who, although under a sentence of imprisonment, chooses to commit a crime that the State has deemed the most reprehensible.
Interpreting a similar but not identical aggravating circumstance, the Supreme Court of Missouri held:
"Appellant next contends that the trial court erred in instructing the jury that it could find as an aggravating circumstance that the capital murder had occurred while appellant was in the lawful custody of a place of confinement because the state had presented no evidence that the custody was lawful. Appellant argues that the state must prove beyond a reasonable doubt that his initial arrest and custody were lawful, e.g., that there was probable cause for his arrest. We disagree.
"The meaning of 'lawful custody' in § 565.012.2(9), RSMo 1978, has not been construed. Therefore, we hold that this phrase means 'custody under color of law,' that is, in the custody of a lawful authority. The adjective 'lawful' takes as its definiendum the authority enforcing the confinement and not the custody. We agree with the state that the statute impliedly distinguishes between custody by a lawful authority and confinement by a legally unauthorized person or entity. The reasons are threefold:
"First, the contrary construction would not square with other statutes and the earlier pronouncements of this court that construe those statutes. This court has recently noted in construing § 575.150.3, RSMo 1978, that it is no defense to prosecution for wounding an officer while he is actively engaged in performing his lawful duties that the arrest was without probable cause, State v. Thomas, 625 S.W.2d 115, 121 (Mo. 1981) ; nor is it a defense that the law that a defendant was arrested for violating was unconstitutional. Id. It is no defense to the crimes of escape or resisting *1198 arrest that the confinement was illegal. State v. Croney, 425 S.W.2d 65, 68 (Mo. 1968). §§ 575.150.3 and 575.210, RSMo 1978. State v. Croney held that: 'where the imprisonment is under color of law, the prisoner is not entitled to resort to self-help but must apply for his release through regular legal channels.' State v. Thomas, supra, at 122, held that because a defendant has no right to resist an unlawful arrest by a known police officer, his resistance cannot be condoned by reducing the degree of the resulting offense. Clearly, it would be no defense to capital murder that the defendant was incarcerated unlawfully; and, it would be inconsistent with the policies and reasons underlying the above cited cases and statutes now to hold that the aggravating circumstance of a capital murder in a place of lawful confinement is negated where the underlying arrest, for example, was not lawful.
"Second, a distinction between custody by a lawful authority and confinement by a legally unauthorized person is consistent with basic tort law and serves a legitimate state purpose. Where one is confined by a legally unauthorized person, one has the right of self-defense. However, one does not have the right of self-defense where custody is by a lawful authority unless the authority uses unlawful force. The policy underlying the distinction is that underlying the statutory aggravating circumstances to protect the authorities who are lawfully appointed to administrate and guard penal facilities....
"Third, to hold to the contrary would be to render the death penalty flowing from this aggravating circumstance arbitrary and capricious because the penalty given would depend not upon the defendant's conduct or circumstances under his control, but, rather, upon the conduct of the police in making an illegal arrest or of the legislature in enacting a bad law.
"We hold that the state was required to show only that the custody was under color of law and that the evidence presented was sufficient to support a finding beyond a reasonable doubt that appellant committed a capital murder while in the lawful custody of a place of confinement."
State v. Trimble, 638 S.W.2d 726, 733-34 (Mo. 1982). Later, in State v. Antwine, 743 S.W.2d 51, 71-72 (Mo. 1987), the Supreme Court of Missouri again held:
"Appellant argues that the aggravating circumstance of committing a murder while in a place of lawful confinement should be submitted to a jury only when a murder is committed by a person sentenced to prison. Since appellant was not under sentence, but only under arrest, he contends that it was error to submit that aggravating circumstance to the jury.
"In [State v.] Trimble, this Court decided that
" 'The legitimate state purpose expressed in the statute is not merely to deter capital murder in prisons where imprisonment may not, but to deter them in every case. It is not a condition precedent to the death penalty for capital murder with the aggravating circumstance that the killing was in a prison that the defendant previously had been given a life sentence.
" 638 S.W.2d [726] 737 [ (Mo. Banc 1982) ]. Nor do we believe it is a condition precedent to imposing the death penalty that the person charged with committing murder while in lawful confinement be under any sentence. The statutory condition precedent is lawful confinement. The policy justifications for this aggravating circumstance, 'deterring those otherwise undeterred; protecting *1199 prison guards who daily serve the state in a dangerous environment; and protecting other prison inmates who are relatively defenseless in the prison environment,' Id., are equally strong whether the defendant finds himself in lawful confinement as an incident of arrest or as a result of a sentence. The point is denied."
As in Missouri, enhancing a capital defendant's punishment because he or she committed the offense while under a sentence of imprisonment does not require the State to prove the sentence of imprisonment was the result of a valid or legal conviction. To do so would focus the application of this aggravating circumstance to the validity of a prior conviction rather than on the defendant's inability or refusal to adjust his behavior although under a sentence of imprisonment. I do not believe that the legislature intended such a result. Rather, I believe that the legislature enacted § 13A-5-49(1) to enhance the sentence for capital offenders who prove that they are impervious to the State's rehabilitative efforts and who prove that they are a future danger to society and individuals in the prison system by committing a capital offense while serving a sentence of imprisonment. Thus, I do not believe that the State is required to prove that the capital offender had counsel or waived counsel when he or she was convicted of the offense for which the imprisonment was imposed.
Because the purpose of § 13A-5-49(1) is to enhance the punishment of capital offenders who commit capital murder while under a sentence of imprisonment, the State needed to prove only that Russell was under a sentence of imprisonment when he killed Officer Sollohub for this aggravating circumstance to apply. The State did so; therefore, I believe § 13A-5-49(1) was correctly applied and disagree with the majority's decision to the contrary. Therefore, I respectfully dissent from the majority's decision to grant Russell penalty-phase relief.
On Application for Rehearing
JOINER, Judge.
The State has filed an application for rehearing and a brief in support of that application. See Rule 40, Ala. R. App. P. This Court, because we had ordered a return to remand, initially declined to accept the State's application on the intervening remand and ordered that it be stricken pursuant to Ex parte Harris, 947 So. 2d 1139 (Ala. 2005).[1] The State thereafter moved this Court to reconsider our decision, noting that the "reversal of Russell's death sentence voided the penalty-phase proceeding, and the slate has been wiped clean." (State's motion to reconsider, p. 2); see Ex parte Apicella, 87 So. 3d 1150, 1154 (Ala. 2011) ("Reversal of a judgment and remanding of the cause restores both the State and the defendant to the condition in which they stood before the judgment was pronounced."). This Court granted the State's motion and accepted the State's application for rehearing and supporting brief.
The State's application for rehearing does not convince us that our original decision was in error. Upon further consideration, however, we no longer think a return to remand is necessary in this case. Therefore, we have modified our original opinion to omit the requirement that the circuit court make a return to our remand instructions. Because our decision is now final, Russell may file an application for rehearing as to that part of our judgment affirming his convictions.
*1200 APPLICATION FOR REHEARING DENIED; OPINION OF SEPTEMBER 8, 2017, MODIFIED [BY SUBSTITUTION OF PAGES 139-40].
Welch, Kellum, and Burke, JJ., concur. Windom, P.J., concurs in part and dissents in part, with opinion.

"[W]hen the Court of Criminal Appeals remands a case, unless the Court of Criminal Appeals has expressly directed a return to its remand order, we will treat its decision as final." Harris, 947 So. 2d at 1142 (emphasis added).